IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2001

## STATE OF TENNESSEE v. TERRY JEROME THOMAS

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 224967     Douglas A. Meyer, Judge**

---

**No. E2001-00431-CCA-R3-CD**
**October 10, 2001**

---

Following a trial, a Hamilton County jury convicted the defendant of rape, and the trial court sentenced him to ten years imprisonment. In this appeal, the defendant alleges (1) the evidence was insufficient to sustain his conviction, and (2) his sentence was excessive. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Larry J. Campbell, Chattanooga, Tennessee, for the appellant, Terry Jerome Thomas.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; William H. Cox, III, District Attorney General; and Dean C. Ferraro, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The state's proof revealed the following. On September 20, 1997, the victim and her boyfriend, Joshua Santana, went to the home of Chris Smith, an acquaintance of Santana, where the victim met the defendant for the first time. The victim and Santana left the residence and later had sexual intercourse in the vehicle. Thereafter, Santana used a white shirt that was in the vehicle's backseat to wipe off his ejaculation. Subsequently, they drove to Parkway Billiards. Santana phoned Smith and requested Smith join them, and shortly thereafter Smith entered with the defendant. While Santana played billiards, the victim talked with the defendant.

At approximately 12:45 a.m., the victim and Santana left Parkway Billiards in her vehicle, following Smith and the defendant. They began arguing concerning the victim's desire to return home, and Santana suddenly exited the vehicle. In an effort to find him, the victim returned to the street fronting Parkway Billiards where she saw the defendant. The defendant came over to her vehicle; she informed him of the argument; and he got in the car. Then they stood outside her car talking and smoking. The defendant subsequently began "making advances on [her]." When she explained she was not interested, he continued and tried to kiss her. When she requested that they go some place "more public," the defendant pushed up her dress and tried to force apart her knees. At that point, another vehicle came into view; the defendant backed away; and she attempted to flee. The victim got into her car, but she was unable to lock the doors or raise her windows before the defendant grabbed her ignition key.

The defendant ordered her out of her vehicle, but she refused. The defendant stated, "[i]f you want to take this public, we'll go public," and he ordered her to drive. While she was driving, the defendant grabbed the steering wheel and placed his foot on the gas peddle, essentially driving from the passenger seat. He guided the vehicle in an alley behind an abandoned building and stopped the vehicle. The victim attempted to jump from the car, but the defendant grabbed her neck and said, "[d]on't make me break your neck." The defendant forced her dress over her head, and the victim stated, "[i]f you're going to do this, please just use a condom." The defendant inquired if she had one, and she stated "no." The defendant responded, "[w]ell, I guess you're just s--t out of luck." Then, the defendant removed the victim's underwear, performed cunnilingus on her, vaginally raped her, and ejaculated on her face and chest, wiping himself with the same shirt Santana had used. The defendant stated, "I can't believe I just raped a woman."

The defendant instructed her to take him to a neighborhood, which she did. Then, she proceeded approximately one block to a gas station that she knew officers frequented. There, she met Officer Glen Scruggs who testified the victim was hysterical, crying, and shaking. She explained to him that she had been raped by an individual known as "T-Money." Officer Scruggs transported the victim to the rape crisis center.

Detective Larry Swafford, of the major crimes division, testified the victim was "near hysteria" when he saw her. She provided him with the defendant's general description, street name "T-Money," and first name "Terry." Swafford further stated the victim's vehicle was processed for evidence. Later, Swafford procured a photograph of the defendant, and the victim identified this photograph as depicting the person who raped her.

Mildred Jeter, a sexual assault nurse with the rape crisis center, testified she detected no physical injury to the victim, but further explained it was common for there to be no detectable injury to a rape victim. After conducting tests, she identified the presence of semen on the victim's chest but none in her vaginal area. However, she submitted swabs to the TBI for more extensive testing.

TBI Agent Sharon Jenkins testified she received DNA samples from Santana, the victim, and the defendant, which she tested against samples collected by Jeter and law enforcement officers. She

detected DNA from semen belonging to the defendant and Santana on both the shirt and vaginal swab collected from the victim.

## I.  SUFFICIENCY OF THE EVIDENCE

### A.  Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt."  Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App.1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978).  Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence.  Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956).  To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.  State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

### B.  Analysis

The relevant statute defines rape as:

[u]nlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act; [or]

(2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent.
. . . .

Tenn. Code Ann. § 39-13-503. Furthermore, "'[f]orce' means compulsion by the use of physical power or violence and shall be broadly construed. . . ." Tenn. Code Ann. § 39-11-106(a)(12).

The victim testified that the defendant forcibly penetrated her, holding her throat and threatening to break her neck. The testimony of the victim alone is sufficient to convict a defendant of rape. State v. McKnight, 900 S.W.2d 36, 48 (Tenn. Crim. App. 1994) *(citing* Montgomery v. State, 556 S.W.2d 559, 560 (Tenn. Crim. App. 1977)). This issue is without merit.

## II. SENTENCING

The range of punishment for rape, a Class B felony, as a Range I offender is not less than eight years nor more than twelve years. *See* Tenn. Code Ann. § 40-35-112(a)(2). The defendant contends his sentence was erroneously enhanced to ten years due to the trial court's application of sentencing enhancement factor (7) (the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement). *See* Tenn. Code Ann. § 40-35-114(7). We respectfully disagree.

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999).

The trial court applied sentencing enhancement factors (1) (a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range), (7) (the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement), and (8) (the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community). *See* Tenn. Code Ann. § 40-35-114(1),(7),(8). The trial court applied mitigating factor (13) (any other factor consistent with the purposes of this chapter), regarding the defendant's remorse and desire to take care of his child. *See* Tenn. Code Ann. § 40-35-113(13).

The presentence report reveals the defendant had prior convictions consisting of one felony and at least five misdemeanors. Accordingly, the trial court properly applied factor (1). Furthermore, defendant previously violated the conditions of his community service program for misdemeanor theft. Accordingly, the trial court properly applied factor (8). The defendant does not challenge these enhancement factors.

However, the defendant challenges the application of enhancement factor (7). Our supreme court has recently stated:

> [F]actor (7) may be applied with evidence including, but not limited to, sexually explicit remarks and overt sexual displays made by the defendant, such as fondling

or kissing a victim or otherwise behaving in a sexual manner, or remarks or behavior demonstrating the defendant's enjoyment of the sheer violence of the rape.

State v. Arnett, 49 S.W.3d 250, 262 (Tenn. 2001). The victim testified the defendant made "advances" toward her prior to the rape, including attempts to kiss her. Furthermore, the victim testified the defendant stated he enjoyed her resistence during the rape. The trial court properly applied this enhancement factor.

We see no reason to disturb the sentence imposed by the trial court.

## CONCLUSION

Based on the above analysis, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE